IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:18-cr-00331 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| ) | |
| GARY MCCREE ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 64, "Motion"). Via the Motion, Defendant seeks a reduction of his 30-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 68, "Response"), arguing that Defendant has not shown as required "extraordinary and compelling reasons" for compassionate release or that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against compassionate release.

BACKGROUND

On November 28, 2018, an Indictment was filed in this Court charging Defendant with three felonies: Conspiracy to Distribute Oxymorphone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count One), Possession with Intent to Distribute Oxymorphone, in violation of 21 U.S.C. § 841(a)(1) (Count Two), and Possession of a Firearm by

a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count Three). (Doc. No. 3). On August 28, 2019, Defendant pled guilty to all three counts pursuant to a binding plea agreement submitted under Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. No. 42). More specifically, the agreed sentence was for 30 months in the custody of BOP followed by 3 years of supervised release. (*Id.*).

The United States Sentencing Guidelines range for Defendant was 46 to 57 months. (Presentence Investigation Report at ¶ 82). On March 4, 2020, the Court accepted the binding plea agreement; and consistent with that agreement sentenced Defendant to serve 30 months of imprisonment followed by 3 years of supervised release. (Doc. Nos. 56, 57). According to BOP, Defendant's release date is April 8, 2022. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Oct. 26, 2020).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[1] the district court may under certain circumstances grant a defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for

---

[1] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[2] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a

---

[2] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 38.

sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[3]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[4] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[5] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[6]

---

[3] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[4] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[5] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

[6] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a)

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A). As the Sixth Circuit recently explained:

> Statutory Requirement Two: Before granting a reduced sentence, the court next must "find[ ]" "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). This factor thus leads us right back to § 1B1.13. Beyond the extraordinary-and-compelling-reasons requirement, this policy statement also requires a district court to find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and that "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(2)–(3).
>
> Statutory Requirement Three: Even if a district court finds that extraordinary and compelling reasons exist and that a sentence reduction comports with § 1B1.13, the court may not grant the reduction before "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). These ubiquitous factors consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public. *Id.* § 3553(a)(1)–(2).
>
> This last requirement confirms an overarching point: The district court has substantial discretion. The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so. *See United States v. Keefer*, –– F. App'x ––, [No. 19-6271], 2020 WL 6112795, at *3 (6th Cir. Oct. 16, 2020). Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" § 3553(a) factors do not justify it.

*United States v. Ruffin*, --F.3d--, No. 20-5748, 2020 WL 6268582, at *4 (6th Cir. Oct. 26, 2020).

---

included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

The (familiar) sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying

five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

## THE PARTIES' RESPECTIVE POSITIONS

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and his medical condition (*i.e.*, asthma). (Doc. No. 64 at 4). Defendant asserts that his asthma places him "at high risk for suffering severe consequences from COVID-19[.]" (*Id*.). He claims that "[w]ith his asthma and the danger posed by COVID-19, [Defendant] cannot care for himself safely in his prison environment." (*Id.* at 8). He also asserts that this "is especially true in light of the conditions at his facility, making social distancing impossible and the spread of the virus likely." (*Id.* at 9). As a result, he claims, he has shown "extraordinary and compelling reasons" for his compassionate release under Application Note 1(A)(ii)(I). (*Id*. at 7-10). Defendant also maintains that he would not pose a danger to anyone if released, because his offenses were non-violent and his possession

of the two guns and marijuana in this case was merely of a "temporary nature."[7] (*Id*. at 10, Doc. No. 72 at 5).

Defendant also argues that the Section 3553(a) factors support granting the Motion. (Doc. No. 64 at 10-11). Defendant contends that because his offenses were non-violent, the "nature and circumstances of the offense and the history and characteristics" of Defendant weigh in favor granting the Motion. (*Id*. at 11). Defendant also asserts that the need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner weighs in favor of his release, because the Court ordered substance-abuse treatment as a condition of supervised release and because he would, if released, be able to obtain such treatment in the most effective manner. (*Id*.).

In contemplation of the Court granting his Motion, Defendant also offers a proposed release plan: Defendant proposes that he "reside with his fiancé, Paige Merriweather, in Nashville, Tennessee." (*Id*.).

The Government argues in response that Defendant has not shown "extraordinary and compelling reasons" as required for compassionate release. (Doc. No. 68 at 6). The Government first notes that there is "limited information to assess [Defendant's] reported asthma." Therefore, the Government argues that "based on the limited nature of the medical records, the undersigned opines that there does appear to be evidence substantiating that the defendant may have moderate to severe asthma." (*Id*. at 7). The Government then argues that even if Defendant's asthma diagnosis was substantiated, a review of Defendant's medical records reveals that Defendant's asthma appears to be well managed. The Government also asserts that BOP has taken extensive

---

[7] In his sentencing memorandum, Defendant asserts that the marijuana and firearms belonged to Mr. Cedric Doss and that Defendant was merely transporting these items for Mr. Doss. (Doc. No. 52 at 4).

measures to mitigate the risk to inmates. Accordingly, the Government argues that Defendant cannot show extraordinary and compelling reasons for his release.

The Government next argues that the "facts of the case, combined with [Defendant's] extensive criminal history, demonstrate that release is unwarranted in light of his danger to the community." (*Id*. at 12). Specifically, the Government points to the following facts of the case: "[D]efendant, as a previously convicted felon, not only knowingly possessed two stolen, loaded guns. He also had distribution quantities of drugs and conspired to sell narcotics." (*Id*.). In regard to Defendant's criminal history, the Government points out that Defendant has been involved with the criminal justice system numerous times, including previous narcotics and weapons offenses. (*Id*. at 12 (citing PSR at ¶¶ 48, 54)).

The Government further argues that even if the Court were to conclude that Defendant was not a danger to the community, the Motion should be denied because the Section 3553(a) factors militate against granting the Motion. (*Id.* at 12-14). Specifically, the Government asserts that the 30-month sentence "reflects the seriousness of the crime, promotes respect for the law, and provides just punishment for this firearm and narcotics offense"; and a shortened sentence would not accomplish these goals. (*Id*.). Additionally, the Government argues that because Defendant has only served a small portion of his (below-guideline range) sentence, a shortened sentence would create unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. (*Id*. at 14-15).

Finally, the Government argues that Defendant's Motion should be denied because Defendant has not proposed an adequate release plan. (*Id*. at 11). The Government asserts that the "concern regarding the release plan is that less than two years ago, the defendant was arrested for Domestic Assault; and Ms. Merriweather was the alleged victim." (*Id*. (citing PSR at ¶ 72)).

ANALYSIS

I.  EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As explained above, the Government argues that Defendant has not demonstrated "extraordinary and compelling reasons" for compassionate release. In short, the Court need not decide if Defendant has demonstrated extraordinary and compelling reasons, because the Court below decides that compassionate release is not available to Defendant even if he were able to demonstrate extraordinary and compelling reasons.

III.  DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Defendant can be eligible for compassionate release, such that the Court proceeds to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. The Court generally perceives the precise issue to be whether Defendant would pose such a danger *if released* (and not whether he currently poses a danger while incarcerated). "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at *1 (N.D. Ohio June 13, 2020). The Court finds that Defendant has not met that burden.

As described above, the gist of Defendant's argument is that he would not pose a danger to the community if released, because the instant offenses were non-violent, and his possession of the firearm was only of a "temporary nature" as he was merely transporting the (stolen) firearm for a friend. (Doc. No. 64 at 10).

The Court finds that this is not enough to meet Defendant's burden to demonstrate that he would not be a danger to the community if he were released. The Court does not presume this merely because Defendant is currently incarcerated for a serious (though non-violent) offense. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history. Although Defendant was only 37 years old when he was sentenced, he had a Criminal History Category of V. (PSR at ¶ 59). As the Government points out, Defendant's criminal history includes several narcotics and weapons offenses similar to the instant offenses, including: Weapons Felony Firearm, (*id*. at ¶ 50), Weapons Felony Firearm – Second Offense, (*id*. at ¶ 57), Attempted Delivery/Manufacture of Less than 50 Grams of Narcotic or Cocaine, (*id*. at ¶ 48), and Possession of Marijuana (*id*. at ¶ 54). Combined with his current offenses, this criminal record does not convince the Court that Defendant would not pose a danger to the community if released. *See United States v. Holder*, No. 1:18CR0609, 2020 WL 4570524, at *3 (N.D. Ohio Aug. 7, 2020) (concluding that the defendant posed a danger to the community based on his criminal history that included two felony drug trafficking offenses).

Moreover, the fact that Defendant's possession of the stolen and loaded firearms was of a "temporary nature" does not negate a finding of dangerousness. Defendant maintains that he removed the firearms "from Mr. Doss's residence in order to help Mr. Doss." (Doc. No. 52 at 4). At that time, Mr. Doss was under arrest, and law enforcement had obtained a search warrant for Mr. Doss's residence after discovering narcotics on his person. Thus, it appears Defendant moved

the firearms to prevent discovery of such items by law enforcement. Under these circumstances, such disrespect for the law does not disprove Defendant's dangerousness. And the fact (according to Defendant) that his possession of stolen and loaded firearms was not done by Defendant in isolation, but rather as concerted nefarious action with someone else, actually suggests heightened danger; it is axiomatic that jointly undertaken criminal activity poses dangers to society that is not posed by criminal activity undertaken solo.

Defendant has a couple of points in his favor. He was on pretrial release (for a total of almost 9 months) without any established (as opposed to alleged) violations of his conditions of release. And he was permitted to, and did, self-report to prison. These facts speak well for his ability to display compliant behavior at least for a relatively short period of time. But they say less about his ability to remain complaint for a much longer period of time, including the 22-month period by which his sentence would be shortened were his Motion to be granted.

Ultimately, Defendant's criminal record and continuous inability prior to the instant offenses to correct his criminal behavior demonstrate his repeated disrespect for the law and a likelihood (though admittedly not a certainty) of recidivism. Accordingly, the Court cannot conclude that Defendant would not be a danger to other persons or the community if released.[8]

IV.     SECTION 3553(a) FACTORS

---

[8] It is not lost on the Court that whether someone is a "danger" within the meaning of U.S.S.G. § 1B1.13 in relatively close cases like this one may be in the eye of the beholder. The notion of a "danger" is not entirely unambiguous and is rather subjective, with the line between being and not being such a danger being somewhat blurry. But as the beholder called upon to make the determination in this case, the undersigned cannot find that Defendant is not a danger.

Even if Defendant did demonstrate that he would not be a danger to the community if released, the Court would still deny the Motion in consideration of the Section 3553(a) factors, which collectively cut against granting compassionate release for Defendant.

*Th nature and circumstances of the offense* cut against compassionate release. As noted above, Defendant, as a previously convicted felon, knowingly possessed two stolen, loaded guns and was in possession of distribution quantities of drugs. The Court does not find that the "temporary nature" of the possession, as Defendant describes it, dissipates the seriousness of these offenses. This is especially true if (as Defendant claims) the temporary possession was part of concerted criminal activity undertaken with another person.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release for the same reasons discussed above in connection with whether Defendant would be a danger if released. Moreover, it is relevant to this particular factor (and, one may presume, the next factor below), that, as the Government notes, Defendant's condition has been managed while in prison and BOP has been taking efforts (imperfect though they may be) to control the spread of COVID-19. *See Ruffin*, 2020 WL 6268582, at *8 (affirming district court's denial of motion for compassionate release for an inmate-defendant with serious medical conditions, in part because he "was receiving regular medical treatment to manage those conditions" and "the prison had adopted sufficient preventive measures to slow the spread" of COVID-19).

*The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's need for medical care.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone with a more typical medical profile. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[9] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at FCI Terre Haute, as there are currently 17 active COVID-19 cases in the facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Oct. 28, 2020). The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, the Court would merely be speculating as to the extent of the risk of infection at FCI Terre Haute and as to the likelihood of a bad outcome upon infection. For another thing, to say the least, it is not like there in no substantial risk of infection outside of BOP custody. For

---

[9] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; and the extent to which COVID-19 may be transmitted via contact with inanimate surfaces.

example, the Tennessee Department of Health reports, in Davidson County, Tennessee (where Defendant proposes to reside if released), 32,175 "confirmed or probable" and 2,427 "active" cases of COVID-19 as of October 28, 2020. *See Epidemiology and Surveillance Data*, Tennessee Dept. of Health, https://www.tn.gov/content/tn/health/cedep/ncov/data.html (last accessed Oct. 28, 2020). And as is also a matter of public record (and undeniable truth in the undersigned's personal experience), these cases have accrued despite substantial steps by both individuals and government authorities to keep the infection rate down in Davidson County.

Additionally, given Defendant's history of criminal activity, Defendant has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital, because under his own theory (and the widely-accepted view worldwide), decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

Defendant additionally asserts that this factor weighs in favor of release because he would be able to obtain his Court-ordered substance-abuse treatment in the most effective manner if he were released. (Doc. No. 64 at 11). The Court still finds, as it did at sentencing, that substance abuse treatment will be beneficial to Defendant after he is released from incarceration. However, the Court does not think the need to receive such treatment "effectively" results in this factor weighing in favor of early release. Of course, courts often order substance-abuse treatment (at the direction of the U.S. Probation Office) as a condition of supervised release, but the ordering of such treatment is not itself grounds for a shorter sentence. In other words, the mere fact that the

sentencing court contemplates such treatment upon the defendant's release does not mean that defendant's release should come sooner than it otherwise would.

*The sentencing guidelines* do not support compassionate release. Defendant was sentenced to a below-guidelines sentence. As noted above, the revised sentence requested by Defendant would amount to an even greater (much greater) downward variance from the guideline range than the one (of more than one-third, *i.e.*, from 46 months to 30 months) Defendant already received at sentencing.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* also cuts against Defendant. The sentence Defendant now seeks would result in a disparately low sentence compared to defendants convicted of similar conduct with similar criminal history. The guidelines range for Defendant was 46 to 57 months. (Presentence Investigation Report at ¶ 82). The Court accepted the binding plea agreement; and the Court sentenced Defendant to serve 30 months of imprisonment, a below guidelines range sentence, as noted above. And Defendant has served only roughly (just under) 8 months of that below-guidelines range sentence. The revised sentence requested by Defendant, therefore, would amount to a reduction of almost 75 percent from a sentence that already incorporated a major variance. This would represent an especially large variance from his guideline sentence, and this fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 2020 WL 6268562, at *7 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-

year sentence" and because "the court had already varied downward" by one-sixth the bottom of the guideline range).

Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines in general, the Court can (and in this instance does) treat such a large requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served so little of his (below-guideline) sentence can weigh against Defendant not only on this factor, but also on other factors. *Id.* ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction.")

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Additionally, a reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct.

For those reasons, the Court finds that the Section 3553(a) factors weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that if released, Defendant has not shown that he would not present a danger to other

persons or the community. Alternatively, even if compassionate release were potentially available, it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 64) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE